IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRACCO DIAGNOSTICS INC.
107 College Road East
Plainsboro, New Jersey 08540

Plaintiff,

v.

DONNA SHALALA,
Secretary of Health and
Human Services,

MICHAEL FRIEDMAN, MD,
Deputy Commissioner of the
Food and Drug Administration,

and

FOOD AND DRUG ADMINISTRATION,

Defendants.

FILED
APR 14 1997
NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

CASE NUMBER 1:97CV00739

JUDGE: Paul L. Friedman

DECK TYPE: TRO/Preliminary Injunction

DATE STAMP: 04/14/97

COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF

1. This is an action to compel the Defendants to apply the requirements of the Federal Food, Drug, and Cosmetic Act, as amended, 21 U.S.C. §321 et seq. ("FD&C Act"), fairly and consistently to all ultrasound contrast imaging agents currently under development or subject to regulatory review by the Food and Drug Administration ("FDA"). Plaintiff seeks preliminary and permanent injunctive relief, a declaratory judgment and relief in the nature of mandamus to require FDA to regulate ultrasound contrast imaging agents in a manner that provides equal protection under the law.

1

2. Plaintiff Bracco Diagnostics Inc. ("Bracco"), a manufacturer of contrast media for diagnostic imaging, is currently investigating an injectable microbubble contrast imaging agent for use with diagnostic ultrasound equipment in the diagnosis of cardiac dysfunction. Molecular Biosystems Inc. ("MBI") has developed a virtually identical injectable microbubble ultrasound contrast imaging agent, which is the subject of a pending application for FDA approval. Despite the fact that Bracco's product and MBI's product are intended to be used for the same purpose and are medically and scientifically indistinguishable, FDA is regulating Bracco's product (and virtually all other similar contrast imaging agents) as a drug, while simultaneously regulating MBI's product as a device. This disparate treatment stems from the fact that two separate components within FDA, one responsible for regulating drugs and the other responsible for regulating medical devices, both have asserted jurisdiction over these products.

3. By treating these similar products differently, FDA has granted one company, MBI, a significant competitive advantage relative to Bracco and other competitors by allowing MBI to gain approval of its contrast media through the more expeditious, less costly premarket approval system applicable to devices, rather than requiring it, like Bracco, to proceed through the more rigorous approval process applicable to drugs.

4. There is no basis for FDA's inconsistent treatment of these products. Such treatment is "arbitrary, capricious, an abuse of discretion, [and not] otherwise in accordance with law." 5 U.S.C. § 706(2)(A). Moreover, because this inconsistent treatment lacks a rational basis, it violates Bracco's right to equal protection under the law guaranteed by the Fifth Amendment of the United States Constitution.

## Parties and Jurisdiction

5. Plaintiff Bracco Diagnostics Inc. is a research-based pharmaceutical company specializing in the development, manufacture, and marketing of innovative diagnostic drug products, including a new microbubble ultrasound contrast agent designated as BR-1 that is currently being clinically tested in humans. Bracco is a Delaware corporation with its principal place of business in Plainsboro, New Jersey.

6. Defendant Donna Shalala is named in her official capacity as Secretary of Health and Human Services, in whom is vested the authority to enforce the requirements of the FD&C Act and who has authority over FDA.

7. Defendant Michael Friedman is named in his official capacity as Deputy Commissioner of the FDA. Dr. Friedman currently is the highest ranking official at the FDA and has been delegated authority to enforce the requirements of the FD&C Act pending confirmation of a new Commissioner of Food and Drugs to replace the outgoing Commissioner, Dr. David A. Kessler.

8. Defendant Food and Drug Administration is an agency of the United States Government. 21 U.S.C. §393(a).

9. This action arises under the FD&C Act, the Administrative Procedure Act ("APA"), 5 U.S.C. §551-706, and the Due Process Clause of the Fifth Amendment to the United States Constitution (including the Equal Protection component incorporated therein). This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §§ 2201-2202 (declaratory relief), and 28 U.S.C. § 1361 (relief in the nature of mandamus). There exists between the parties an actual controversy, justiciable in nature, wherein Plaintiff seeks a declaration of its rights by this Court, as well as injunctive relief and relief in the nature of mandamus, to compel the

Defendants to regulate all ultrasound contrast agents under the same statutory classification and regulatory standards.

10. Venue in this action properly lies in this District pursuant to 28 U.S.C. §1391(e).

Legal and Factual Background

11. Bracco is currently investigating an injectable ultrasound microbubble contrast agent, internally identified as BR-1. BR-1 consists of sulfur hexafluoride, an innocuous gas, suspended in a phospholipid microbubble. It is intended to be used in conjunction with diagnostic ultrasound for diagnosis of cardiac dysfunction by providing opacification of cardiac chambers, improved delineation of endocardial borders, enhanced doppler signal, and visualized wall motion of the heart.

12. Medical imaging contrast agents, with the exception of two products manufactured by a single company, MBI, have always been regulated by FDA as drugs. The Division of Medical Imaging and Radiopharmaceutical Drug Products in the Office of Drug Evaluation of FDA's Center for Drug Evaluation and Research ("CDER") has primary authority for the evaluation and review of medical imaging contrast agents.

13. In the 1982 preamble to its proposed rule classifying radiology devices, FDA formally concluded that radiologic contrast media are to be regulated by FDA as drugs under section 201(g) of the FD&C Act, 21 U.S.C. §321(g), and not as devices. 47 Fed.Reg. 4406, 4412 (January 29, 1982) (proposed rule). Under FDA regulations this statement is considered to be an advisory opinion which is binding on the agency unless repudiated by the agency or overruled by a court. 21 C.F.R. § 10.85(d)(1), (e). To the best of Bracco's knowledge and belief, FDA has never amended or revoked this advisory opinion. See 21 C.F.R. §10.85(g).

14. FDA has, on more than one occasion, specifically determined that individual ultrasound contrast agents are to be regulated as drugs. In 1992, SONUS Pharmaceuticals, Inc. ("SONUS") submitted a request to FDA for a product jurisdiction determination for QW3512, an injectable ultrasound contrast agent containing perfluorocarbon microbubbles. Amanda B. Norton (nee Pedersen), Product Jurisdiction Officer at FDA, informed SONUS in writing that their product was properly regulated as a drug and thus that CDER, rather than the Center for Devices and Radiological Health ("CDRH"), would be designated as the agency component with primary jurisdiction over the product.

15. Likewise, in 1992 FDA's Product Jurisdiction Officer denied a request by ImaRx Pharmaceutical Company ("ImaRx") to submit a Premarket Approval application ("PMA") to CDRH for an oral ultrasound contrast agent. A PMA is the regulatory mechanism used to obtain FDA approval of novel or highly risky medical devices. See 21 U.S.C. §360e. FDA instead determined that ImaRx's product should be regulated as a drug and thus that CDER would have primary review responsibility.

16. Because virtually all medical imaging contrast media have been regulated by CDER, CDER personnel have developed extensive experience in reviewing investigational new drug applications ("INDs") and New Drug Applications ("NDAs") for medical imaging contrast agents and possess unparalleled expertise in assessing the safety and efficacy of all varieties of contrast agents, including those used in conjunction with x-ray, medical resonance imaging (MRI), and ultrasound equipment. Each of these categories of contrast agents raises analogous issues with regard to design, administration, biodistribution, and excretion.

17. An anomaly in this otherwise consistent regulatory scheme is Albunex®, the first contrast agent to be approved by FDA for use with ultrasound diagnostic equipment. A PMA for Albunex® was approved by CDRH on August 5, 1994. Albunex®, which was developed by MBI in partnership in North America with Mallinckrodt Inc., is an injectable suspension of air-filled microspheres made from sonicated 5 percent human albumin used as an aid for ultrasound contrast enhancement. FDA has never explained the reason for its decision to regulate Albunex® as a device rather than a drug, although it likely is due to the fact that, when initially developed, Albunex® included medical instrumentation that was intended to be used by physicians to manually sonicate the albumin just prior to administration to the patient.

18. Relying on FDA's longstanding advisory opinion described in paragraph 13 above, as well as the agency's specific determinations that the earlier SONUS and ImaRx ultrasound contrast agents were drugs, Bracco submitted an IND for its injectable microbubble ultrasound contrast agent, BR-1, to CDER on December 24, 1994. Bracco's IND was accepted by CDER without dispute as to the drug status of BR-1, and clinical trials of BR-1 began in April 1996.

19. Likewise, based on FDA's previous denials of requests to submit PMAs for ultrasound contrast agents, including their own, ImaRx submitted an IND for its latest injectable microbubble ultrasound contrast agent, DMP 115, on August 8, 1995, which was accepted by CDER. Similarly, on September 18, 1996, FDA accepted for filing an NDA for EchoGen®, an injectable microbubble ultrasound contrast agent manufactured by SONUS, which contains a perfluorocarbon gas within the microbubbles and has a formulation closely related to that of BR-1 and FSO69.

20. MBI recently developed a second-generation ultrasound imaging agent called FSO69 which is similar to Albunex®. The novel aspect of FSO69 compared to its precursor, Albunex®,

is the gas encapsulated in the microspheres, which is a perfluorocarbon gas rather than air. The change in the kind of gas in the product, with the resulting increase in the duration of the bubbles in the bloodstream and the insolubility of the perfluorocarbon gas, raises new issues with regard to the safety and efficacy of the product which fall squarely within CDER's area of expertise. Yet in March of 1996 FDA's Product Jurisdiction Officer made a final designation of FSO69 as a device, and CDRH accepted a PMA for FSO69 on October 23, 1996.

21. The only difference between the Bracco product and FSO69 is that the microbubbles in FSO69 are suspended in human albumin while the microbubbles in the Bracco product are suspended in a synthetic medium, a difference which is insignificant from a medical or scientific perspective. In all other material respects, the products and their intended uses are indistinguishable.

22. Despite the fact that Bracco identified the similarities between FS069 and BR-1, and objected to FDA's disparate treatment of these products, in a Citizen Petition discussed in paragraph 31 below, on February 24, 1997, the Radiological Devices Panel of CDRH recommended that FSO69 be approved as a device.

23. At the February 24, 1997 Radiological Devices Panel meeting, panel members and CDRH representatives indicated that they were satisfied with the studies performed by MBI to demonstrate the safety and efficacy of FSO69. The evidence they accepted as adequate for FSO69 differed significantly from the standard of evidence being required of Bracco by CDER to support the safety and efficacy of BR-1.

24. CDER has imposed a number of requirements on Bracco's clinical and other data that were not required of nor met by MBI. Moreover, many of the requirements imposed on Bracco's ultrasound contrast agent were likewise imposed by CDER on the ultrasound contrast agent currently

under development by The Dupont Merck Pharmaceutical Company ("Dupont Merck") and ImaRx.

25. For example, while CDRH has permitted MBI to utilize a head-to-head clinical study with Albunex® as the comparator for efficacy, CDER has required Bracco to verify the diagnosis made with BR-1 and Albunex® against a "gold standard" procedure such as cardioangiography or radionuclide ventriculography.

26. Also, while CDRH only required MBI to conduct a safety follow-up on patients at a single point in time at least 48 hours after administration of FSO69, CDER mandated that Bracco collect and submit follow-up safety data on patients evaluated at 24, 48, and 72 hours post-administration of BR-1.

27. In addition, while CDER required that Bracco perform testing for immunologic parameters in approximately 40 patients, CDRH permitted MBI to test only 10 patients for immunologic parameters.

28. Further, CDRH permitted MBI to conduct clinical studies in an open label fashion with the investigator, sponsor, and patient aware of the contrast agent employed. By contrast, CDER required that Bracco's clinical studies be conducted under blinded conditions where both the sponsor and the patient are blinded to the contrast agent administered in each case. Sophisticated procedures are followed to ensure that the blind is maintained until all study data has been entered into the database and sponsor bias has been effectively prevented.

29. Finally, Bracco was required by CDER to obtain blinded off-site assessments of the acquired images by trained radiologists unaffiliated with the clinical testing site in order to eliminate any potential investigator bias. In contrast, CDRH permitted the principal investigator of FSO69 to

conduct all assessments of efficacy on-site after being informed of all relevant factors leading to the patient's final diagnosis.

30. The differences between the amount and character of the data which has been required by CDER from Bracco, and that which has been required by CDRH from MBI, are significant. The additional steps demanded of Bracco are both costly and time-consuming and therefore represent a substantial added burden imposed on Bracco and a substantial competitive advantage granted to MBI.

31. In order to remedy this inequitable situation, Bracco submitted a Citizen Petition on December 27, 1996, requesting FDA to treat all contrast agents in a fair and evenhanded manner. Docket No. 96P-0511/CP1. Bracco supplemented this Petition on January 30, 1997 and March 19, 1997. At least two other manufacturers of similar contrast agents, DuPont Merck and SONUS, also have filed Citizen Petitions with FDA requesting similar relief. See Docket Nos. 96P-0511/CP2 and 97P-0104.

32. In addition, Bracco filed a Petition for Stay of action on January 30, 1997, requesting that FDA stay any action related to the regulation of ultrasound contrast agents, including the review or approval of any pending PMAs or NDAs for ultrasound contrast agents or the convening of an advisory committee meeting related to the review or approval of such products. Docket No. 96P-0511/PSA1. This Petition for Stay was denied by the Agency on February 28, 1997. A similar petition for stay filed by SONUS also has been denied by FDA. FDA has not yet ruled on the merits of Bracco's (or any other party's) Citizen Petition.

33. On April 8, 1997, Bracco representatives, along with representatives of other ultrasound contrast agent sponsors, met with Amanda B. Norton (nee Pederson) and other FDA representatives, including representatives for both CDER and CDRH, concerning the inconsistent

regulation of ultrasound contrast agents by the Agency. The FDA representatives acknowledged that they were well aware of the existence of this problem. They did not suggest any medical or scientific basis by which the products regulated by CDER and CDRH could be distinguished. Further, they acknowledged that the approval requirements of CDER and CDRH were significantly different. The FDA representatives indicated that FDA had not made any decision on how to address this problem, that they could not give any timetable as to when such a decision would be made, and that they could give no assurance that the Agency would take any steps to prevent CDRH from approving FSO69 prior to the Agency's decision.

34. Bracco has exhausted its administrative remedies.

Claim

35. The inexplicable inconsistency with which FDA has regulated differently members of a single class of products violates the fundamental principle of administrative law that an agency cannot treat similar situations in dissimilar ways. Such action is arbitrary, capricious, and an abuse of discretion in violation of the Administrative Procedure Act, 5 U.S.C. §706(2)(A).

36. FDA has provided no rational explanation for its departure in this case from the Agency's longstanding prior policy of regulating ultrasound contrast agents as drugs. Such action is arbitrary, capricious, and an abuse of discretion in violation of the APA, 5 U.S.C. §706(2)(A).

37. Because this inconsistent treatment lacks a rational basis, it violates Bracco's right to equal treatment under the law guaranteed by the Due Process Clause of the Fifth Amendment to the United States Constitution.

38. FDA's arbitrary action in the regulation of ultrasound contrast agents is causing and will cause Plaintiff irreparable injury and there is no compensatory relief available to Bracco to

recover these losses. The harm to Bracco suffered as a direct and immediate result of FDA's arbitrary action is actual and imminent, and permanently and substantially damages Bracco's ability to survive in the marketplace.

39. The requirements and standards imposed on Bracco by CDER are significantly different and more burdensome than those which have been imposed on MBI by CDRH. Bracco has already expended substantial time and resources, and continues to expend substantial time and resources, far in excess of that required to be invested by MBI, in satisfying the standards set by CDER for demonstrating the safety and efficacy of its ultrasound contrast agent.

40. The time and resources expended by Bracco to date are irretrievable and, as Bracco compiles the data mandated by CDER, it continues to invest additional time and resources.

41. Moreover, as a result of FDA's denial of Bracco's Petition for Stay, CDRH could imminently approve MBI's FSO69 as a medical device without FDA first resolving the jurisdictional issue whether this classification is appropriate. If FS069 is approved by CDRH as a medical device and the Defendants later determine that FSO69 and all other similar microbubble ultrasound contrast agents (including Bracco's BR-1) should be regulated as drugs, the premature approval and marketing of FSO69 under the less stringent device standards not only will cause irreparable competitive injury to Bracco as a result of MBI's unjustified headstart in the marketplace, but also will expose the American public to a product that has not been established to be safe and effective under the more rigorous, and more appropriate, standards applied to drugs (which Bracco and other ultrasound contrast media manufacturers currently are being required to satisfy).

42. FDA's violation of Bracco's constitutional right to equal protection, in and of itself, constitutes irreparable injury.

43. FDA's arbitrary action also poses a risk to the public health by wreaking havoc with the adverse event reporting scheme. The requirements for adverse event reporting for devices are significantly different from those for drugs. Because virtually all contrast media are regulated as drugs, most end-users of contrast agents are not familiar with the device reporting scheme, or would not apply it to this type of product. Moreover, with some contrast agents under the jurisdiction of CDRH while most are regulated by CDER, adverse event data is submitted to two different components of FDA. This situation results in a fragmented and inconsistent database, significantly hampering FDA's ability to accurately evaluate the safety and toxicity of ultrasound contrast agents.

44. It is in the public interest for FDA to regulate all ultrasound contrast agents in a fair and equitable manner.

45. Under the Health Care Financing Administration ("HCFA") statute, products classified as drugs by FDA are not eligible for reimbursement under Medicare until they are approved. 42 U.S.C. § 1395j-w. In contrast, products classified as "Non-experimental/Investigational (Category B) Devices" are covered by Medicare prior to approval. 60 Fed.Reg. 48417 (Sept. 19, 1995); Interagency Agreement Between HCFA and FDA Regarding Medicare Coverage of Certain Investigational Medical Devices (Sept. 8, 1995); Implementation of the FDA/HCFA Interagency Agreement (Sept. 15, 1995). Since ultrasound contrast media devices are classified by FDA as Category B, FSO69 is reimbursable under Medicare during investigation while the BR-1, as an investigational drug, is not. Therefore, although Bracco must fully finance the supply of its product to patients in clinical trials, MBI is eligible for Medicare reimbursement for the use of its product at the investigational stage.

46. Bracco, because its product is being regulated as a drug, is also required to pay prior to approval of its product $205,000 in user fees under the Prescription Drug User Fee Act ("PDUFA") that MBI is not required to pay.

47. The FDA has a duty to enforce the law in an equitable manner and there is no adequate remedy available to Plaintiff other the remedy requested of this Court.

WHEREFORE, Plaintiff prays that this Court:

1. Enter a temporary restraining order prohibiting Defendants from approving the PMA for FS069 prior to this Court's decision on Plaintiff's request for a preliminary injunction;

2. Enter a preliminary injunction prohibiting Defendants from approving the PMA for FS069 until such time as this Court has ruled on Plaintiff's request for declaratory and permanent injunctive relief;

3. Enter a judgment declaring that FDA's current regulation of ultrasound contrast agents is arbitrary, capricious and otherwise not in accordance with law and that Defendants must regulate all ultrasound contrast agents in a consistent, evenhanded and efficient manner;

4. Enter a permanent injunction and grant relief in the nature of mandamus prohibiting Defendants from applying inconsistent standards and procedures in regulating ultrasound contrast agents, including approving the PMA for FS069, while at the same time requiring other ultrasound contrast agents to be regulated by CDER; and

5. Grant such other interim and final relief as it deems just and equitable.

Respectfully submitted,

Peter O. Safir (D.C. Bar No. 217612)
Richard S. Morey (D.C. Bar No. 38877)
Prescott M. Lassman (D.C. Bar No. 437782)

KLEINFELD, KAPLAN AND BECKER
1140 Nineteenth Street, N.W.
Washington, D.C. 20036
(202) 223-5120

Counsel for Bracco Diagnostics Inc.

Of Counsel:

Christopher L. Cannon, Esq.
Bracco Diagnostics Inc.
Princeton Forrestal Center
107 College Road East
Plainsboro, New Jersey 08540
(609)514-2229

Dated: April 14, 1997